**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATRINA BURLET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 18 CV 05875 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| JOHN BALDWIN, in his official and | ) | |
| Individual capacities, and GLADYSE | ) | |
| TAYLOR, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      Plaintiff's First Amendment Claim Should Be Dismissed. .................................. 5

    A.      Prisoners have no right to specific programs, nor does Plaintiff have a
        First Amendment right to teach such a program. ......................................... 5

    B.      Plaintiff lacks standing to assert prisoners' First Amendment rights. ....................... 5

    C.      Plaintiff's free speech rights have not been infringed. .............................. 8

    D.      Plaintiff does not have an associational right to enter a prison. ................................ 8

    E.      Defendant Taylor is entitled to qualified immunity. ................................. 11

II.     Plaintiff Has Failed To State a Valid First Amendment Retaliation Claim. ..................... 12

III.    Plaintiff's Procedural Due Process Claim Fails Because She Lacks a
       Liberty or Property Interest in Her Access to the Prison. ................................. 13

IV.     Plaintiff's Failure to Intervene claim Is Conclusory and Should Be Dismissed. .............. 17

V.      Plaintiff's Conspiracy Claim Should Be Dismissed. ......................................... 19

VI.     Plaintiff's State-Law Defamation Claim Should Be Dismissed. .................................... 22

    A.      The Court should decline supplemental jurisdiction over Plaintiff's
        state-law claim. ........................................................................................ 22

    B.      Plaintiff's fails to state a defamation claim because Baldwin's statement
        was not defamatory. .................................................................................. 22

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007) ........... 18

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720 (7th Cir. 2010) ..................................... 22

*Allen v. Wine*, 297 Fed. Appx. 524 (7th Cir. 2008) ................................................................... 18

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................................... 12, 13

*Anderson v. Vanden Dorpel*, 172 Ill. 2d 399 (1996) .............................................................. 23-24

*Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372 ..................................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 4, 17

*Azeez v. Fairman*, 795 F.2d 1296 (7th Cir. 1986) ...................................................................... 12

*Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737 (N.D. Ill. 2016). ................................... 23

*Bell v. Wolfish*, 441 U.S. 520 (1979) ......................................................................................... 8

*Bilka v. Farrey*, 447 F. App'x 742 (7th Cir. 2011) ................................................................. 8-10

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ......................................................................... 14

*Bowman v. City of Franklin*, 980 F.2d 1104 (7th Cir. 1992) ....................................................... 22

*Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009) ....................................................................... 13

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ........................................................ 13

*Cody v. Harris*, 409 F.3d 853 (7th Cir. 2005) ........................................................................... 23

*Cohabaco Cigar Co. v. United States Tobacco Co.*, No. 98 C 1580,
   1998 WL 773696 (N.D. Ill. 1998) .................................................................................... 20

*Cole v. Board of Trustees of Northern Ill. Univ.*, 38 F. Supp. 3d 925 (N.D. Ill. 2014) ............... 21

*Davis v. Peters*, 566 F. Supp. 2d 790 (N.D. Ill. 2008) ............................................................... 19

*Doering v. Bd. of Tr.'s of Dunlap Cmty. Fire Prot. Dist.*, No. 12 CV 1018,
   2012 WL 1533349 (C.D. Ill. Apr. 11, 2012) ..................................................................... 15

*Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052 (7th Cir. 1994) ............ 4

*Finsel v. Cruppenink*, 326 F.3d 903 (7th Cir. 2003) ................................................................... 11

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (U.S. 2012) ......... 17

*Garza v. Miller*, 688 F.2d 480 (7th Cir. 1982) ........................................................................... 5

*Ghiles v. City of Chicago Heights*, No. 12 CV 07634,
   2016 WL 561897 (N.D. Ill. Feb. 12, 2016) ....................................................................... 21

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) .................................................. 4

*Gossmeyer v. McDonald*, 128 F.3d 481 (7th Cir. 1997) ............................................................. 18

*Gray v. Cannon*, 974 F. Supp. 2d 1150 (N.D. Ill. 2013) .............................................................. 7

*Gress v. Reg. Trans. Authority*, No. 17-cv-8067,
   2018 WL 3869962 (N.D. Ill. Aug. 15, 2018) ..................................................................... 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................................. 11

*Hartman v. Moore*, 547 U.S. 250 (2006) .................................................................................. 12

*J.C. Whitney & Co. v. Renaissance Software Corp.*, 98 F. Supp. 2d 981 (N.D. Ill. 2000) ........... 21

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ............................................................ 19

*Kakuris v. Klein*, 88 Ill. App. 3d 597 (1st Dist. 1980) ............................................................... 24

*Knox v. Smith*, 342 F.3d 651 (7th Cir. 2003) ............................................................................ 11

*Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1 (1992) ...................................................... 22

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .................................................................................. 7

*Krueger v. Lewis,* 342 Ill. App. 3d 467 (2003) ......................................................................... 23

*Kuwik v. Starmark Star Marketing & Administration, Inc.,* 156 Ill.2d 16 (1993) ...................... 23

*Lacey v. Everly*, No. 3:18-CV-590, 2018 WL 4300517 (N.D. Ind. Sept. 7, 2018) ...................... 7

*Madyun v. Thompson*, 657 F.2d 868 (7th Cir. 1981) ................................................................. 5

*Malley v. Briggs*, 475 U.S. 335 (1986) ..................................................................................... 11

*Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999) ................................................................... 6-8

*Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000) .................................................................. 6

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ...................................................... 4

*Mittelman v. Witous,* 135 Ill.2d 220 (1989) ............................................................................ 23

*Murdock v. Washington*, 193 F.3d 510 (7th Cir. 1999) ............................................................. 5

*Nkrumah v. Clark*, 977 F.2d 585, 1992 WL 238336 (7th Cir. 1992) .......................................... 8

*Overton v. Bazetta,* 539 U.S. 126 (2003) ............................................................................ 8, 17

*Owen v. Carr,* 113 Ill.2d 273 (1986) ....................................................................................... 22

*Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623 (7th Cir. 1999) ...................... 21

*Pearson v. Callahan*, 555 U.S. 223 (2009) .............................................................................. 12

*Pell v. Procunier,* 417 U.S. 817 (1974) ............................................................................. 10, 17

*Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996) ........................... 6

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) ............................................. 3

*Rujawitz v. Martin*, 561 F.3d 685 (7th Cir. 2009) .................................................................... 15

*Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857 (7th Cir. 1999) .................................... 20

*Sandin v. Conner*, 515 U.S. 472 (1995) .................................................................................... 5

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................................... 11

*Scott v. City of Chicago*, 619 F. App'x 548 (7th Cir. 2015) ...................................................... 21

*Smith v. Eckstein*, No. 17-cv-667, No. 2018 WL 2976031 (E.D. Wis. June 13, 2018) ............... 21

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) ........................................................................ 20

*Sweeney v. Bausman*, No. 87 C 5532, 1987 WL 45713 (N.D. Ill. 1987) ................................... 19

*Swick v. City of Chicago*, 11 F.3d 85 (7th Cir. 1993) ............................................................... 15

*Tabor v. City of Chicago*, 10 F. Supp. 2d 988 (N.D. Ill. 1998) ................................................. 21

*Thornton v. Barnes*, 890 F.2d 1380 (7th Cir. 1989) ................................................................. 14

*Townsend v. Vallas*, 256 F.3d 661 (7th Cir. 2001) .................................................................. 15-16

*Turner v. Safley,* 482 U.S. 78 (1987) .............................................................................. 9, 16, 17

*Van den Bosch v. Raemisch*, 658 F.3d 778 (7th Cir. 2011) ........................................................ 17

*Van Horne v. Muller,* 185 Ill.2d 299, 307 (1998) ...................................................................... 23

*Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ............................................................ 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................................... 6

*Westphal v. City of Chicago*, 8 F. Supp. 2d 809 (N.D. Ill. 1998) ........................................... 15-16

*Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) ...................................................................... 19

*Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir. 1992) ................................................. 15

**Statutes**

18 U.S.C. § 371 .......................................................................................................................... 20

**Rules**

Federal Rule of Civil Procedure 8 ........................................................................................ 17, 20

Federal Rule of Civil Procedure 9 ............................................................................................ 20

Federal Rule of Civil Procedure 12 ............................................................................................ 4

;

Defendant John Baldwin, Director of the Illinois Department of Corrections ("IDOC") and Gladyse Taylor, Assistant Director of the IDOC ( "Defendants"), by their attorney, the Illinois Attorney General, submit the following memorandum in support of their motion to dismiss Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Katrina Burlet volunteered to teach a debate program at Stateville Correctional Center. After receiving approval from the IDOC, she invited state legislators and members of the public to watch her class debate the issue of whether Illinois should re-institute a parole system. IDOC officials later cancelled the debate class and revoked Plaintiff's ability to visit Stateville (or any other IDOC facility) due to her failure to follow approved security protocols. Plaintiff alleges that these actions violate her First Amendment rights and constitute unlawful retaliation for her exercise of her First Amendment rights. However, Plaintiff does not have a right, under the First Amendment or otherwise, to run a program in a prison or to visit a prison. Moreover, even if she had such a right, the IDOC's actions in barring Plaintiff from IDOC facilities are reasonably related to the IDOC's legitimate interest in facility security.

Plaintiff also claims that Defendants violated her procedural due process rights by revoking her clearance without a hearing. However, she fails to allege a liberty or property interest that would support such a due process right. Plaintiff's failure to intervene claim is conclusory and fails to state a claim under *Iqbal*, while Plaintiff's conspiracy claim is conclusory and duplicative of her other constitutional claims. And finally, Plaintiff's state-law defamation claim against Director Baldwin should be dismissed because his comments are subject to a reasonable, innocent construction and are therefore not defamatory.

# BACKGROUND

Plaintiff alleges that she volunteered to teach a debate class for prisoners at Stateville Correctional Center from October of 2017 to April 24, 2018, and taught and coached a debate team for prisoners at the Illinois Youth Center-Warrenville ("IYC-Warrenville") from April of 2017 to April of 2018. Complaint, Dkt. 1, at ¶¶ 4, 18. Beginning in October of 2017, Plaintiff received approval from the IDOC to invite legislators and members of the public to a debate between prisoners at Stateville Correctional Center on the topic of parole. *Id*. ¶¶ 18-24. To prepare for the debate, Plaintiff claims that she submitted a list of attendee names to IDOC by October 13, 2017, sixty (60) days in advance of the debate, and that IDOC issued an official gate pass for the attendees on November 30, 2017. *Id*. ¶¶ 26-27. However, on December 4, 2017, Plaintiff was notified that the event had been cancelled because Plaintiff had failed to provide sufficient notice of the legislators that were scheduled to attend. *Id*. ¶¶ 28-30. Plaintiff alleges that upon belief this was "mere pretext" and that in fact, Defendants, along with other government officials, did not want Plaintiff's debate team to "communicate with Illinois legislators about correctional matters." *Id*. ¶ 34. Subsequently, the debate was rescheduled and held on March 21, 2018, and was successful. *Id*. ¶¶ 36, 42-46.

Thereafter, Plaintiff made plans to re-create the debate in front of Stateville prisoners on April 26, 2018. *Id*. ¶ 47. On April 3, 2018, Plaintiff claims Defendant Taylor came to a debate class and told them that she did not want legislators to "hear the class's views on parole," that it was "getting in the way of IDOC's pursuit of its own legislative agenda," and was "inconsistent with her own personal policy initiatives within IDOC." *Id*. ¶¶ 50-52. Further, Defendant Taylor allegedly made "veiled threats" such as, "I better not see my name in any lawsuits," and a "statement that inmates took to mean that she had power to transfer them to less-favorable IDOC institutions." *Id*. ¶ 54. Subsequently, the debate was canceled and Plaintiff was banned from all

IDOC institutions. *Id.* ¶ 56. Plaintiff believes that an IDOC official communicated with the Illinois Department of Juvenile Justice regarding Plaintiff's ban from IDOC facilities and, as a result, she was also banned from IYC-Warrenville. *Id.* ¶ 57. Plaintiff also claims that Defendant Baldwin made a false and defamatory statement during an NPR interview when he said that the class was cancelled because Plaintiff "chose not to follow basic corrections safety and security practices."[1] *Id.* ¶¶ 64-65.

As a result, Plaintiff claims that her professional interests and reputation were harmed, that contributions to the Justice Debate League, a non-profit organization that paid her salary, have declined, and that "other pursuits" were also damaged, such as her "religious ministry activities" at IDOC facilities. *Id.* ¶¶ 69-73. Plaintiff claims that "[a]lthough Justice Debate League grew to include debate teams in prisons outside of Illinois, Ms. Burlet's programs in Illinois prisons were the most significant programs in the organization." *Id.* ¶ 17. Additionally, she claims that she is no longer able to work with an "elderly parole-eligible prisoner" at Pinckneyville to help with his application to the Prisoner Review Board and that she is no longer able to visit former students and debate team members. *Id.* ¶¶ 74-75.

Plaintiff brings six claims against Defendants: Count I alleges a First Amendment claim against Defendant Taylor for "restricting [P]laintiff's debate class from engaging in protected First Amendment activity for no legitimate penological purpose" (*id.* ¶ 78); Count II alleges a First Amendment Retaliation claim against Defendants for causing Plaintiff to "suffer a

---

[1] The transcript of the NPR interview, which is available online at https://www.npr.org/templates/transcript/transcript.php?storyId=622377600, is attached as Exhibit 1 hereto. Documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). While Plaintiff did not attach the full transcript of the NPR article, she quotes from the transcript and cites to the NPR website URL that hosts the full transcript. *See* Dkt. 1 ¶ 65. Moreover, this transcript is central to Plaintiff's state defamation claim, since Plaintiff's entire defamation claim against Director Baldwin is based on his statement in this interview. *Id.* ¶¶ 65, 97-102.

deprivation likely to deter First Amendment activity" (*id*. ¶ 82); Count III alleges a procedural

due process claim against Defendants for "cancell[ing] [Plaintiff's] debate programs and

bann[ing] her from IDOC facilities without . . . procedural protections" (*id*. ¶ 86); Count IV

alleges a Failure to Intervene claim against "one or more defendants" for "fail[ing] to take

reasonable steps to prevent" violations of Plaintiff's constitutional rights (*id*. ¶ 90); Count V

alleges a Conspiracy claim against Defendants for "reach[ing] an agreement to silence the

Stateville debate class" (*id*. ¶ 94); Count VI alleges a state-law defamation claim against Baldwin

for "mak[ing] false and defamatory statements about [P]laintiff." *Id*. ¶ 98.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a

claim based on "lack of subject matter jurisdiction." Whether a party has standing to bring a

claim is a "two-part inquiry that considers 'both constitutional limitations of federal-court

jurisdiction and prudential limitations in its exercise.'" *Family & Children's Ctr., Inc. v. Sch.

City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994), *quoting Gladstone Realtors v. Village of

Bellwood*, 441 U.S. 91, 99 (1979). "If the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A party may also move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim. "[O]nly a complaint that states a plausible claim for relief survives a

motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). In reviewing the sufficiency of a complaint under this standard, the court

must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago,* 671 F.3d

611, 616 (7th Cir. 2011). However, legal conclusions and "conclusory allegations merely reciting

the elements of the claim are not entitled to this presumption of truth." *Id.*

# I.    Plaintiff's First Amendment Claim Should Be Dismissed.

The Plaintiff cannot maintain a First Amendment claim against Assistant Director Taylor because she does not have a right to enter any prison, whether under the First Amendment or otherwise. Moreover, Assistant Director Taylor is entitled to qualified immunity because she did not violate Plaintiffs' clearly established rights.

## A.    Prisoners have no right to specific programs, nor does Plaintiff have a First Amendment right to teach such a program.

First, prisoners do not have a right to any specific program such as the debate class. Prison officials need the flexibility to manage the volatile prison environment, which may include cancelling programs. *See Sandin v. Conner*, 515 U.S. 472, 483 (1995) (citations omitted); *see also Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999) (prisoner lacked a liberty or property interest in participating in a cooking class), *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (no liberty interest in educational programs or social and rehabilitative activities); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("This court has previously held that there is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that rise to a violation of the Eighth Amendment."), *citing Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir. 1981). The fact that the debate class involved speech does not change this basic rule. And if prisoners have no right to any specific program, then Plaintiff does not have a right to teach a program at Stateville.

## B.    Plaintiff lacks standing to assert prisoners' First Amendment rights.

The Complaint further alleges that "defendant Taylor violated plaintiff's rights under the First Amendment . . . by restricting plaintiff's debate class from engaging in protected First Amendment activity for no legitimate penological purpose." Dkt. 1 ¶ 78. As discussed further below, the Complaint's allegation that there was "no legitimate penological purpose" for

cancellation of the program is incorrect; the program was cancelled due to the IDOC's legitimate security concerns. But this allegation fails to state a claim for a more fundamental reason: it asserts the rights of third parties—not Plaintiff. Whatever rights the prison debate team members may have,[2] Plaintiff does not have standing to assert those rights in this lawsuit.

"The prohibition on third-party claims is a prudential standing limitation which recognizes that claims are best prosecuted by those who actually have been injured, rather than by someone in their stead." *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000), *citing Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999). This prohibition "flows from a concern that third parties will not adequately represent the individuals whose rights they seek to vindicate." *Massey v. Helman*, 196 F.3d at 739, *quoting Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). There is a "narrow exception" to this rule: a plaintiff may bring a claim on behalf of a third party when she "can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest." *Massey v. Wheeler*, 221 F.3d at 1035.

Two Seventh Circuit cases involving prisoners are particularly relevant here. In *Massey v. Wheeler*, the Seventh Circuit held that a lawyer did not have standing to bring a First Amendment claim relating to the prison's restrictions on inmates' unmonitored telephone calls. 221 F.3d at 1032, 1035. There was no allegation that anyone's speech would be chilled if the lawyer could not bring the third-party claim, and the only obstacle that an inmate faced in bringing his own First Amendment claim was the Prison Litigation Reform Act's administrative exhaustion requirement. *Id*. at 1035.

---

[2] As discussed further below, the prisoners' First Amendment rights may curtailed based upon the IDOC's legitimate security concerns. Moreover, the prisoners remain free to discuss parole or any other topic through other means. *See, e.g.*, Dkt. 1 ¶¶ 62-63 (open letter written by the prisoners was hand-delivered to the Governor's office by Plaintiff and circulated on the Internet).

Similarly, in *Massey v. Helman*, the Seventh Circuit held that a prison doctor who was fired from his position could not bring a First Amendment access to courts claim or an Eighth Amendment deliberate indifference claim on behalf of his former inmate patients. 196 F.3d at 735-36, 739. The court first found that the doctor had no standing to assert these claims because he had no "personal stake in the outcome of the prisoners' cases"; both claims "pertain exclusively to the rights and interests of the inmates." *Id*. at 739. However, the court also found that the doctor also failed to establish prudential standing; the doctor was "not a proper individual to represent the prisoners' interests" for two reasons. *Id*. at 740. First, while the doctor claimed that the doctor-patient relationship created the required "close relationship," the doctor was fired from his position six weeks before he filed suit. Thus, he did not have a doctor-patient relationship with the inmates when he filed suit. *Id*. at 741. Moreover, the doctor was not seeking to provide the kind of "time-sensitive" or unique medical services to the inmates that would potentially justify allowing third-party standing. Second, the court also found that there was no obstacle which prevented the prisoners from bringing their own lawsuits. *Id*. The doctor therefore lacked standing to pursue any claims on behalf of the prisoners.[3]

In this case, Plaintiff does not allege that she has a sufficiently close relationship with the debate team members such that third-party standing is appropriate here. Her allegation that she has "formed meaningful relationships" with these inmates does not resemble an ongoing doctor-patient or attorney-client relationship which may suffice for third-party standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (while an existing attorney-client relationship may be sufficient for third-party standing, a hypothetical attorney-client relationship with unknown

---

[3] *See also Gray v. Cannon*, 974 F. Supp. 2d 1150, 1163 (N.D. Ill. 2013) (prisoners lacked standing to assert First Amendment rights of publishers); *Lacey v. Everly*, No. 3:18-CV-590, 2018 WL 4300517, at *1 (N.D. Ind. Sept. 7, 2018) (prisoner lacked standing to assert First Amendment claim on behalf of another prisoner).

future clients was not); *Massey v. Helman*, 196 F.3d at 741 (while doctor-patient relationship may be sufficient for standing in limited circumstances, former doctor-patient relationship was not). And Plaintiff does not allege that there are any special obstacles that would prevent the former debate team members from bringing their own lawsuit.

### C. Plaintiff's free speech rights have not been infringed.

Moreover, Plaintiff's free speech rights remain unimpeded: she remains free to speak or write about a new parole system, or any other topic. Plaintiff's own Complaint makes this evident, as it mentions Plaintiff's hand-delivery of the prisoners' open letter to the Governor's office (Dkt. 1 ¶¶ 62-63); Plaintiff's press conference at the Thompson Center (*id.* ¶ 63); and Plaintiff's interview on NPR (Ex. 1). Moreover, a Google search shows that Plaintiff has also been interviewed on various local TV news shows and she maintains a website for her organization, the Justice Debate League. Plaintiff is only barred from entering an IDOC facility, and as discussed below, this prohibition does not violate the First Amendment.

### D. Plaintiff does not have an associational right to enter a prison.

Maintaining institutional security and order in prison facilities is a legitimate governmental interest that may require limitations on prisoners' constitutional rights. *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). Because freedom of association is incompatible with the incarceration of prisoners, reasonable limitations on the public's ability to visit prisoners do not violate either the prisoner's or the visitor's constitutional rights. *Overton v. Bazetta,* 539 U.S. 126, 131 (2003) (citations omitted) (upholding restrictions prohibiting minor nieces and nephews and former inmates from visiting prisoners); *Bilka v. Farrey*, 447 F. App'x 742, 744 (7th Cir. 2011) ("[W]e have not recognized that [a right to intimate association] extends to someone who wants to visit a non-relative in prison."). *Cf. Nkrumah v. Clark*, 977 F.2d 585, 1992 WL 238336, at *4 (7th Cir. 1992) ("[T]he right to visit a person is not the kind of fundamental interest

protected by the due process clause."). And even if Plaintiff had such a right, that right may be limited by the IDOC's legitimate interest in institutional security. *Bilka*, 447 F. App'x at 744 (holding that even if former prison employee had right to visit prisoner, prison could bar former employee from visiting based on legitimate security concerns).

The courts employ the test announced in *Turner v. Safley,* 482 U.S. 78 (1987), which set forth the level of scrutiny to be used in evaluating prison regulations that impacted inmates' constitutional rights. In *Turner*, the prison regulations restricted inmates' First Amendment right to correspond as well as their associational right to marry. Under conditions not involving persons in custody, of course, infringements on such communicative and associational rights would impose on the state a heavy burden of justification. For those in custody, however, the state restriction must meet a reasonableness standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. This test is far more deferential to correctional officials than strict scrutiny.

The Supreme Court identified four considerations lower courts should use in applying the test: 1) whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; 2) whether alternative means are open to inmates to exercise the asserted right; 3) what impact an accommodation of the right would have on guards and inmates and prison resources; and 4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89-91.

All four factors of the *Turner* test are satisfied in this case. First, Director Baldwin has stated on the record that Plaintiff lost her prison access due to security concerns. Dkt. 1 ¶ 65; *see also* Ex. 1 at 2. Revoking Plaintiff's prison access and cancelling the debate program is thus reasonably related to the government interest of maintaining institutional security. The goal of

maintaining institutional security is paramount to all other legitimate penological objectives. *Pell v. Procunier,* 417 U.S. 817, 823 (1974). Courts must afford substantial deference to the expert judgement of prison officials on the management of security restrictions, unless there is substantial evidence in the record to indicate the response is exaggerated. *Pell*, 417 U.S. at 827; *Bilka*, 447 F. App'x at 743.

For example, in *Pell*, the Supreme Court deferred to the corrections officials for establishing a visitation policy. 417 U.S. at 827. A California prison regulation barred reporters from face-to-face one-on-one interviews with specific inmates in a prison. *Id* at 820. However, reporters were allowed to interview inmates selected at random by corrections officials, and they could sit in on a prison program and interview those participants. *Id.* at 830. The prison official's decision to eliminate the one-on-one interview privilege was a reasonable response to security concerns, as the prisoners could still be contacted through other means in order to gather newsworthy information. *Id.* at 830-32 (the security threat was focused on individual prisoners gaining notoriety in the prison through the fame of the newspaper and influencing other prisoners to not comply with prison rules).

Second, alternative means of communication are still open to both the prisoners and the Plaintiff. Plaintiff alleges only that her ability to visit the debate team members has been revoked. Dkt. 1 ¶ 75. Plaintiff does not allege that IDOC officials have taken any steps to stop prisoners from communicating with the Plaintiff through the mail or over the telephone on any topic, including a new parole system. This freedom is demonstrated in the Complaint itself, which alleges that the prisoners wrote an open letter to the Governor, which Plaintiff hand-delivered to the Governor's office. Dkt. 1 ¶¶ 62-63.

Considering the third and fourth factors, if the Court ordered Plaintiff's access to be reinstated, this would undercut the IDOC's ability to ensure the security of its institutions, an ability that is especially critical at a maximum-security facility such as Stateville. And as discussed above, IDOC officials should receive deference regarding Stateville's visitation policy in order to maintain the security and integrity of the institution. Plaintiff is not entitled under the First Amendment to have unfettered access to the prisons, and the IDOC's decision to prohibit access is entitled to substantial deference. Accordingly, Plaintiff's First Amendment claim should be dismissed.

### E.    Defendant Taylor is entitled to qualified immunity.

Moreover, even if Plaintiff had stated a First Amendment claim, Assistant Director Taylor is entitled to qualified immunity on that claim. Qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Determining whether an official is entitled to qualified immunity involves two questions. *Knox*, 342 F.3d at 657. First, a court must determine "whether the facts, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right." *Id., citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if the official's conduct violated a constitutional right, the court "must determine if that right was clearly established at the time of the alleged violation." *Id., citing Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003). However, this is a flexible inquiry: a court may decide that a defendant's conduct did not violate a clearly established constitutional right without deciding if a constitutional right was violated at all. *Pearson v. Callahan*, 555 U.S. 223, 236

(2009).

When determining that a right was clearly established, the "right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986). A plaintiff cannot simply point to a clearly established broad constitutional guarantee to overcome the defense of qualified immunity, which is a defense not only from liability but also from the burdens of trial. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). When analyzing qualified immunity, court must determine if the circumstances confronted by individual defendants were sufficient to create in that defendant liability for these acts or omissions:

> [The] right of the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640.

In this case, Assistant Director Taylor is entitled to qualified immunity on Plaintiffs' First Amendment claim because even if there may have been a constitutional violation, Plaintiff's constitutional right was not clearly established. As discussed above, there is no clearly-established law holding that prison officials who restrict prison access for a former volunteer would violate that individual's First Amendment rights. Accordingly, Plaintiff's First Amendment claim should be dismissed for that reason as well.

## II.     Plaintiff Has Failed To State a Valid First Amendment Retaliation Claim.

Government officials are prohibited from retaliating against individuals for their speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *citing to Crawford-El v. Britton*, 523, U.S. 574,

592 (1998). However, the right allegedly violated must be a 'particularized' right that is clear to a reasonable official. *Anderson*, 483 U.S. at 640. To establish a *prima facie* case for a First Amendment violation, Plaintiff must show that "(1) [she] engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two can be shown. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, Plaintiff fails to establish the first element of her *prima facie* case. Plaintiff seems to be arguing that teaching the debate program was the protected First Amendment conduct. However, as discussed above, neither Plaintiff nor the debate class members have any right to a prison program, under the First Amendment or otherwise. Moreover, Defendants are entitled to qualified immunity on this claim as well. Plaintiff can point to no clearly established law holding that cancelling a prison program (even one involving speech) would violate the Plaintiff's clearly established rights. Plaintiff's First Amendment retaliation claim should be dismissed for this reason as well.

## III. Plaintiff's Procedural Due Process Claim Fails Because She Lacks a Liberty or Property Interest in Her Access to the Prison.

In Count III, Plaintiff alleges that Defendants deprived her of a "protected interest when they cancelled her debate programs and banned her from IDOC facilities" without procedural protections. Dkt. 1 ¶ 85. However, Plaintiff's due process claim fails because she has not identified a protected liberty or property interest that Defendants violated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 542 (1985).

As discussed above, Plaintiff does not have any liberty interest in conducting a program at Stateville or even in visiting a prison. Thus, Plaintiff seems to be claiming that she has a property interest in the right to continue her volunteer work with prisoners. In order to establish a

claim for loss of property without due process of law, a plaintiff must demonstrate a deprivation of a protected property interest entitling her to process. *Thornton v. Barnes*, 890 F.2d 1380, 1386 (7th Cir. 1989) (internal citations omitted). To establish a protected property interest, a person must have more than an 'abstract need,' 'desire,' or 'unilateral expectation' in the interest claimed. *Id.* Instead, he or she must have a 'legitimate claim of entitlement to it.' *Id*. Protected property interests are not created by the Constitution, but instead are created by 'existing rules or understandings that stem from an independent source, such as state law,' that secures the benefit and 'supports the claim of entitlement.' *Id*., *citing Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). Here, Plaintiff fails to provide any support for her claim that she is entitled to teach a debate class on a volunteer basis and enter IDOC facilities to continue other volunteer work.

Specifically, Plaintiff claims that she was deprived of "a protected interest when they cancelled her debate programs and banned her from IDOC facilities." Dkt. 1 ¶ 86. Plaintiff claims that her professional interests and reputation were harmed, that contributions to the Justice Debate League have declined, which paid her salary, and that "other pursuits" were also damaged, such as her "religious ministry activities" at IDOC. *Id*. ¶¶ 69-73. Plaintiff claims that "[a]lthough Justice Debate League grew to include debate teams in prisons outside of Illinois, Ms. Burlet's programs in Illinois prisons were the most significant programs in the organization." *Id*. ¶ 17. Additionally, she claims that she can no longer work with an "elderly parole-eligible prisoner" at Pinckneyville to help with his application to the Prisoner Review Board and that she is no longer able to visit former students and debate team members. *Id*. ¶¶ 74-75. However, all of these claims are claims to continue her volunteer work and do not qualify as a protected property interest.

Plaintiff is not employed by the Illinois Department of Corrections, nor is she being paid by the Illinois Department of Corrections to continue her volunteer work. Even at-will employees, who are being paid for their services, "ha[ve] no legitimate expectation of continued employment, and so, no property interest in that employment." *Doering v. Bd. of Tr.'s of Dunlap Cmty. Fire Prot. Dist.*, No. 12 CV 1018, 2012 WL 1533349, at *2 (C.D. Ill. Apr. 11, 2012), *citing Rujawitz v. Martin*, 561 F.3d 685, 688-89 (7th Cir. 2009). In addition to the lack of a protected entitlement, Plaintiff does not allege that IDOC's actions resulted in a change of her job duties or a reduction in pay with respect to her present employer, the Justice Debate League. *See, e.g.*, *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993) ("We do not think that "property" within the sense of the amendment should be extended to the purely dignitary or otherwise nonpecuniary dimensions of employment."). While Plaintiff claims that contributions to Justice Debate League have declined, whether this decline is linked to IDOC facilities being inaccessible to Plaintiff is speculative at best. *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (teacher's "loss of [the] possibility for additional income through coaching not sufficient to implicate due-process protections).

In fact, Plaintiff admits that she has other opportunities to voluntarily teach debate classes with prisoners outside IDOC, as the Justice Debate League includes debate teams in prisons outside of Illinois. Dkt. 1 ¶ 17. Although Plaintiff claims that the programs in "Illinois prisons were the most significant programs in the organization," that does not equate to the right to specifically volunteer at IDOC facilities. *Westphal v. City of Chicago*, 8 F. Supp. 2d 809, 813 (N.D. Ill. 1998), *citing Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) ("'It is the liberty to pursue a *calling or occupation*, and not the right to a specific job that is secured by the Fourteenth Amendment'"). In *Westphal*, Plaintiff's argued that as police officers on

limited duty, they had a property interest in the right to "bid for available jobs, have their seniority rights recognized and be considered for promotions," which they were prohibited from doing. *Id.* at 810, 812. However, the Court found that because they were not "foreclosed from their occupation as police officers or . . . employment opportunities outside the Chicago Police Department," they were only foreclosed from specific jobs within the police department and therefore their liberty interests were not implicated. *Id.* at 813. Similarly, while Plaintiff does not have the property interest that would be afforded to an employee of IDOC, Plaintiff also admits that she has still been able to pursue the calling of volunteer debate coach at other facilities. It then follows that her liberty interests have indeed, not been violated.

Even if Plaintiff did have some sort of property interest, Defendants' duty to secure the safety of prisons must come first. As discussed above, when a prison regulation limits fundamental rights, the appropriate inquiry is whether the regulation is "'reasonably related' to legitimate penological objectives." *Turner*, 482 U.S. at 87. Here, the limitation of Plaintiff's access to IDOC facilities was based on her failure "to follow basic corrections safety and security practices." Dkt. 1 ¶ 65. While Plaintiff claims that this statement hurt her reputation, this statement merely explains the rationale of not allowing Plaintiff into IDOC facilities and says nothing about Plaintiff's abilities to teach debate teams, Plaintiff's credentials, or the value of the program itself.[4] *Townsend*, 256 F.3d at 671 (finding that because plaintiff could not show prospective employment opportunities were unavailable as a result of an employer stating plaintiff should not be rehired due to failure to perform duties was insufficient to demonstrate a deprivation of liberty interest). Defendants must have the ability to limit the access of individuals who do not follow safety regulations in order to secure prisons and protect visitors, prison staff,

---

[4] In fact, taking Defendant Baldwin's entire statement into consideration as cited to in Plaintiff's Complaint, he states that "The debate program was really well received." Ex. 1 at 2.

and the prisoners themselves. *Turner*, 482 U.S. at 93 (holding that "logically advance[ing] the goals of institutional security and safety" does not unconstitutionally limit constitutional rights.); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 325 (U.S. 2012) ("maintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face"); *Pell*, 417 U.S. at 823 ("central to all other corrections goals is the institutional consideration of internal security within the facilities themselves"); *Van den Bosch v. Raemisch*, 658 F.3d 778, 790 (7th Cir. 2011) ("prisoner safety" and the "security an operation of the entire prison system" are legitimate penological concerns). Courts have further held that in the interest of deterring substance abuse amongst prisoners, rights to visitation of family members can be strictly limited as "freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131.

In sum, Plaintiff has failed to assert any source of entitlement that prohibits IDOC from limiting her access without first providing process, and have likewise failed to allege any actionable deprivation attributable to Defendants' actions. Moreover, because Plaintiff cannot point to any cases clearly establishing that a volunteer is entitled to due process before her access to a prison is revoked, Defendants are entitled to qualified immunity on this claim as well. Because the fundamental requirements of a procedural due process claim are absent from Plaintiffs' complaint and the Defendants are entitled to qualified immunity, the claim must be dismissed.

## IV. Plaintiff's Failure to Intervene claim Is Conclusory and Should Be Dismissed.

Federal Rule of Civil Procedure 8 requires that a defendant be given "fair notice" of the claim against him or her and the grounds upon which it rests. *Iqbal*, 556 U.S. at 698. While a

plaintiff need not allege all the facts necessary to succeed on her claims, she must provide allegations sufficient to put each and every defendant on notice of the specific claims against them. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Here, Plaintiff's Complaint is completely bereft of the factual content necessary to put either Defendant on notice of the specific claims of wrongdoing against them or to allow this Court to draw the reasonable inference that Defendants are liable for the alleged misconduct.

Plaintiff brings a failure to intervene claim against "one or more of the defendants." Dkt. 1 ¶ 90. Plaintiff goes on to vaguely assert that one or more of these individuals should have "prevent[ed] the violation of plaintiff's constitutional rights." *Id*. ¶ 90. Apparently, Plaintiff does not even know which constitutional violations could have been prevented, let alone which individual or individuals that had the opportunity to prevent these violations. "Section 1983 creates liability only for a defendant's personal acts or decisions." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Thus, in order to find a defendant liable under Section 1983, the plaintiff must prove that the defendant was personally involved in the alleged misconduct. *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir. 1997); *Allen v. Wine*, 297 Fed. Appx. 524, 531 (7th Cir. 2008). Plaintiff's conclusory failure to intervene claim fails to provide notice on how Defendants were personally involved.

To the extent Plaintiff is arguing supervisory liability on the part of John Baldwin as Director of the Illinois Department of Corrections or Gladyse Taylor as the Assistant Director of the Illinois Department of Corrections, such a claim also fails. Section 1983 does not authorize "supervisory liability"; it creates liability "only for a defendant's personal acts or decisions." *Vinning-El*, 657 F.3d at 592. For a "supervisor to be liable for a constitutional deprivation, he 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear

of what [he] might see.'" *Tillman v. Burge*, 813 F. Supp. 2d 946, 974 (N.D. Ill. 2011), *quoting*

*Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). One court has explained the "turn a

blind eye" portion of this test as follows:

> To prevail under the ostrich theory, . . . Plaintiff must present evidence that a
> supervisor suspected that something was wrong and deliberately avoided
> knowledge of it; an officer cannot be liable for "failure to alleviate a significant
> risk that he should have perceived but did not" because such a situation does not
> involve "actual knowledge of a substantial risk of serious harm."

*Davis v. Peters*, 566 F. Supp. 2d 790, 810 (N.D. Ill. 2008) (quotations and citations omitted).

In this case, Plaintiff fails to assert how exactly either Defendant was directly responsible

for any of the actions taken in this case. The mere fact that Defendants hold the titles of Director

and Assistant Director does not mean that they knew about and had the opportunity to prevent

the commission of the alleged constitutional violations. Plaintiff's failure to intervene claim

against Defendants is insufficiently pled and should be dismissed.

## V. Plaintiff's Conspiracy Claim Should Be Dismissed.

Plaintiff's conspiracy claim under Section 1983 and Section 1985 fails because (1)

Plaintiff has failed to plead her conspiracy claim with the required specificity; (2) her conspiracy

claim is duplicative of her other constitutional claims; (3) the intracorporate conspiracy doctrine

bars the claim; and (4) Plaintiff has not alleged class-based animus necessary to support a

Section 1985 conspiracy claim.

First, in order to establish a party's liability for civil conspiracy under Section 1983 or

Section 1985, a plaintiff must demonstrate (1) an agreement (2) between two or more persons (3)

to commit an unlawful act or to inflict a wrong against another and (4) an overt act (5) resulting

in damages. *Sweeney v. Bausman*, No. 87 C 5532, 1987 WL 45713, *1 (N.D. Ill. 1987); *see also*

*Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Evidence of an alleged conspiracy cannot

be speculative. *Williams*, 342 F.3d at 785. Civil conspiracy claims must be pled with specificity; the plaintiff must "identify, with particularity, the nature of the conspiracy and each defendant's role in the conspiracy." *Cohabaco Cigar Co. v. United States Tobacco Co.*, No. 98 C 1580, 1998 WL 773696 at *6 (N.D. Ill. 1998). A plaintiff must allege particular facts sufficient to establish that the alleged conspirators agreed to inflict the alleged wrong. *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 896 (N.D. Ill. 1987). A bare-bones allegation of a conspiracy does not satisfy the pleading requirements of Rule 8, much less the specificity requirements of Rule 9(b). *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999); *Cohabaco Cigar Co.*, 1998 WL 773696 at *6.

In this case, Plaintiff fails to allege the particulars of the alleged conspiracy with the required specificity. Plaintiff alleges only that the Defendants "reached an agreement to silence the Stateville debate class" and "one or more of the defendants took action that resulted in the deprivation of plaintiff's constitutional rights." Dkt. 1 ¶ 94. Plaintiff alleges no particular facts that would establish that Defendants agreed to take any action against Plaintiff or the debate class. Because these conclusory allegations do not satisfy the pleading requirements, Plaintiff's Section 1983 and Section 1985 conspiracy claim should be dismissed.

Second, Plaintiff's conspiracy claim is superfluous to her other constitutional claims and should be dismissed for this reason as well. Unlike a criminal conspiracy (in which the act of conspiring is itself an offense, *see* 18 U.S.C. § 371), a conspiracy under Section 1983 is not itself an actionable wrong, but may serve to expand the sphere of those liable for a Section 1983 violation. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Here, all Defendants are public employees amenable to suit under Section 1983 directly, "which means that a conspiracy claim

has no role to play." *Scott v. City of Chicago*, 619 F. App'x 548, 548 (7th Cir. 2015). Count V adds nothing to Plaintiff's other constitutional claims and should be dismissed.

Third, Count V also fails to state a claim because the agents of a single entity cannot conspire among themselves. *See, e.g., Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632 (7th Cir. 1999) ("under the intracorporate conspiracy doctrine a conspiracy cannot exist solely between members of the same entity"); *J.C. Whitney & Co. v. Renaissance Software Corp.,* 98 F. Supp. 2d 981, 983 (N.D. Ill. 2000) (complaint did not state a claim because "officers of the same company, acting within their scope of employment, . . . could not commit a civil conspiracy"). The intracorporate conspiracy doctrine applies to Section 1983 claims against the employees of state agencies. *See, e.g., Gress v. Reg. Trans. Authority*, No. 17-cv-8067, 2018 WL 3869962 , at *3-4 (N.D. Ill. Aug. 15, 2018); *Smith v. Eckstein*, No. 17-cv-667, No. 2018 WL 2976031, at *3 (E.D. Wis. June 13, 2018) (dismissing conspiracy claim under intra-corporate conspiracy where all defendants were employees of the Wisconsin Department of Corrections).[5] "Where the defendants' ability to injure a plaintiff derives solely from their positions within the entity for which they work, and the influence they wield therefrom, the doctrine will apply." *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998). In this case, all Defendants are employees of the IDOC. Dkt. 1 ¶¶ 5-6. Accordingly, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim.

Finally, Plaintiff has not alleged any class-based animus necessary for a conspiracy claim under 42 U.S.C. § 1985. A Section 1985 claim requires not only an allegation of a conspiracy but

---

[5] *See also Cole v. Board of Trustees of Northern Ill. Univ.*, 38 F. Supp. 3d 925, 934 (N.D. Ill. 2014) (dismissing conspiracy claim brought against state university supervisors and coworkers); *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *3 (N.D. Ill. Feb. 12, 2016) ("Even if city officials had been identified in Guiles conspiracy claims, the claims would still be dismissed under the intracorporate conspiracy doctrine, which is applicable to Guiles' conspiracy claims brought under both federal and Illinois law"); *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998).

also "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Bowman v. City of Franklin*, 980 F.2d 1104, 1108 (7th Cir. 1992). However, Plaintiff's complaint is completely devoid of any suggestion that Defendants have acted based on any class-based animus. Plaintiff's Section 1985 conspiracy claim should be dismissed for this reason as well.

## VI.    Plaintiff's State-Law Defamation Claim Should Be Dismissed.

### A.    The Court should decline supplemental jurisdiction over Plaintiff's state-law claim.

If the Court dismisses all federal claims, then the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law defamation claim. *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

### B.    Plaintiff's fails to state a defamation claim because Baldwin's statement was not defamatory.

In addition, Plaintiff's state-law defamation claim should also be dismissed for failure to state a claim. Under Illinois law, a defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1, 10 (1992). A statement is defamatory *per se* if it is facially harmful. *Owen v. Carr,* 113 Ill.2d 273, 277 (1986). While Illinois recognizes five categories of statements as defamatory *per se*, only two of those categories are relevant here: (1) words that impute that a person is unable to perform or lacks integrity in performing her or his employment duties; and (2) words that impute a person lacks ability or otherwise prejudices that person in her or his profession. *Van Horne v.*

*Muller,* 185 Ill.2d 299, 307 (1998). These two categories are generally considered together, and "to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job.*" *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (emphasis in original). It is generally not sufficient that the statement implies that the subject lacked integrity or judgment. *Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 743 (N.D. Ill. 2016).

Although a complaint for defamation *per se* need not set forth the allegedly defamatory words verbatim*,* the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content. *See Mittelman v. Witous,* 135 Ill.2d 220, 229-30 (1989), *abrogated on other grounds by Kuwik v. Starmark Star Marketing & Administration, Inc.,* 156 Ill.2d 16 (1993). Precision and particularity are also necessary so that the defendant may properly formulate an answer and identify any potential affirmative defenses. *See*, *e.g., Krueger v. Lewis,* 342 Ill. App. 3d 467, 470 (2003). In this case, Plaintiff cites to the statement that Director Baldwin made during the NPR interview but fails to include the context within which the statement is made.

A plaintiff may not recover if the allegedly defamatory statement "can reasonably be given an innocent construction." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 412 (1996); *Basile*, 225 F. Supp. 3d at 743. For example, in *Anderson,* an employee was interviewing for a job at the YMCA and had been informed the interview had gone well. *Anderson*, 172 Ill. 2d at 403-04. The interviewer spoke with employee's supervisor at Northwestern, who reported that she "did not follow-up on assignments" and "she could not get along with her coworkers." *Id.* at 404. The employee did not get the job at the YMCA and sued for defamation, stating that the comments made by the supervisor were false. *Id.* The Illinois Supreme Court found that there was a

reasonable innocent construction of these statements, and therefore they could not support a

defamation *per se* claim. *Id.* at 413. The language used was not defamatory *per se* because it

signified that the employee did not fit in with the former employer's standards and expectations.

*Id.* at 415. The court also cited to a previous decision, *Kakuris v. Klein*, in which an employer's

statements could be construed innocently because the supervisor referred only to past conduct

and did not discuss any future ability to perform her duties. *Anderson*, 172 Ill. 2d at 415, *citing* to

*Kakuris v. Klein*, 88 Ill. App. 3d 597, 600 (1st Dist. 1980).

Similarly, in *Antonacci v. Seyfarth Shaw, LLP,* 2015 IL App (1st) 142372, the court

found that the following statements in an email from a supervising partner (Ms. Ponder) to

several human resources staff members, were not defamatory: (1) "he was incapable of

performing his job as evidenced by the missed deadlines, his lack of enthusiasm for projects Ms.

Ponder assigned to him, and his lack of time management skills;" (2) "he misrepresented that 'he

could waive into the bar of the State of Illinois prior to' being hired;" (3) "he failed to show up

for work on a day he was supposed to meet with Ms. Ponder about the city project;" and (4) "he

concealed the fact that he had spoken to [the law firm's] pro bono director." *Id.* ¶ 25. The court

found that these statements were capable of an innocent construction when read in context of the

email as a whole and given the purpose of the correspondence. *Id.* ¶ 28. The court concluded

that, in context,

> In [] context, we cannot reasonably conclude that Ms. Ponder's statements
> accused Mr. Antonacci of actions and misconduct that imputes a general lack of
> integrity in the performance of his duties as a lawyer or prejudices him. Rather,
> the more reasonable conclusion is that Ms. Ponder stated her belief that Mr.
> Antonacci was not a good fit with Seyfarth and did not work well with her.

*Id.* ¶ 30.

In this case, Director Baldwin's comments in the NPR may also be construed in an

innocent light. He does not disparage Plaintiff's job ability to run a debate program, stating that

"The debate program was really well-received." Ex. 1 at 2. He does not say that she is incompetent or incapable of doing her job as a debate teacher. He simply says, "But this was about somebody who chose not to follow basic corrections safety and security practices. And that could not happen in an institution." *Id*. Like the supervisors in *Anderson, Kakuris*, and *Antonacci*, Director Baldwin's comment was focused on his workplace, not on Plaintiff's ability to perform in future jobs. Director Baldwin's statements can be reasonably and innocently construed to say that, in the opinion of IDOC officials, Plaintiff's previous conduct did not adhere to the necessary security protocols, and thus that she was not a good fit for a volunteer position at a maximum-security prison. Accordingly, Director Baldwin's statement was not defamatory and Plaintiff's state-law defamation claim should be dismissed.

## CONCLUSION

Wherefore, for these reasons, Defendants Assistant Director Taylor and Director Baldwin respectfully request that this Court dismiss the Plaintiff's Complaint with prejudice, and order any further just and proper relief.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois          By:     /s/ *Sarah H. Newman*
                                              Sarah H. Newman
                                              Kelly C. Bauer
                                              Assistant Attorneys General
                                              General Law Bureau – Civil Rights Unit
                                              100 West Randolph Street, 13th Floor
                                              Chicago, Illinois 60601
                                              312-814-6131 / 312-814-3119
                                              snewman@atg.state.il.us
                                              kbauer@atg.state.il.us

                                              *Counsel for Defendants*